IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL B. MCNAMARA, )
)
    Plaintiff, )
)
v. )
) No. 13 C 5215
HIRERIGHT SOLUTIONS, INC., )
)
    Defendant. )
)

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On July 22, 2013, plaintiff Michael B. McNamara ("McNamara") filed a two-count class action complaint action against defendant HireRight Solutions, Inc. ("HireRight") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (2013). (Dkt. No. 1 ¶¶ 39-49.) On September 18, 2013, HireRight filed a motion to dismiss both counts of McNamara's complaint. (Dkt. No. 25.) On November 7, 2013, this court granted (Dkt. No. 30) McNamara's motion for leave to file an amended complaint (Dkt. No. 28); McNamara filed his pending two-count amended class action complaint ("Amended Complaint") (Dkt. No. 31 ("Am. Compl.")); and HireRight filed its motion to dismiss both counts (Dkt. No. 32). For the reasons explained below, that motion is granted in part and denied in part.

## FACTUAL BACKGROUND

According to McNamara's Amended Complaint,[1] in April 2013, he applied for a job with Sears as an associate buyer for mechanical tool sets. (Am. Compl. ¶ 9.) The employment application asked whether McNamara had ever been convicted of a crime, to which he answered "no." (*Id.* ¶ 28.) Sears told McNamara that he had been hired pending the results of a background check. (*Id.* ¶ 10.) On April 17, 2013, Sears requested a "consumer background check report" on McNamara from HireRight. (*Id.* ¶ 11.) HireRight provided the completed background report (the "HireRight Report") to Sears on April 19, 2013. (*Id.* ¶ 12; *see also* Am. Compl. Ex. A.) The HireRight Report, which is attached to the Amended Complaint as Exhibit A, revealed that McNamara was charged with a misdemeanor for disorderly conduct on May 16, 2011. (Am. Compl. Ex. A.) According to the HireRight Report, the "disposition" of McNamara's case was "Pled guilty-found guilty" and the "sentence" was "1 year supervision terminated satisfactory 10/1/12 24 hours SWAP $400 fine." (*Id.*) The HireRight Report further stated that McNamara's criminal record "[met] company standards" and that McNamara was "[o]kay to hire [for] this job." (*Id.*)

Sears allegedly interpreted the information on the HireRight Report to mean that McNamara had been convicted of a crime. (Am. Compl. ¶ 15.) Sears informed McNamara that

---

[1] The court in ruling on HireRight's motion has accepted the allegations in McNamara's Amended Complaint as true. The facts recited in this opinion are based on the allegations in McNamara's Amended Complaint, along with any materials attached to, referenced in, or integral to the allegations of McNamara's Amended Complaint. *Cole* v. *Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (citing *Thompson* v. *Ill. Dep't. of Prof'l. Regulation*, 300 F.3d 750, 753-55 (7th Cir. 2002)).

the conviction disqualified him for the job and accused McNamara of answering his employment application dishonestly. (*Id.* ¶ 15.) After McNamara explained to Sears that the HireRight Report was misleading and that he had not been convicted of any crime, Sears agreed to hire McNamara. (*Id.* ¶ 31.) Although he got the job, McNamara claims that his relationship with Sears was strained as a result of the "embarrassing" incident.[2] (*Id.* ¶¶ 31-32.)

On May 10, 2013, as a result of nearly losing his employment offer, McNamara contacted HireRight by both phone and "multiple emails" to dispute the information contained its report. (Am. Compl. ¶ 25; *see also* Am. Compl. Ex. E.) In one of these communications, McNamara explained to HireRight that the disposition of his case should be reported as "Supervision/Not Guilty" and not as a "conviction." (Am. Compl. Ex. E.) McNamara also sent HireRight a letter dated April 19, 2013 from Deanna Watkins, an employee of the Circuit Court of Cook County Social Service Department,[3] stating:

> Mr. Michael McNamara was placed on Supervision on 10-14-11 for Disorderly Conduct. Supervision is a temporary finding of guilt; the defendant completed his conditions and was terminated satisfactory. Supervision is not a guilty plea, and or a conviction. If more clarification is needed please feel [sic] to contact me.

---

[2] McNamara alleges in his response to HireRight's motion to dismiss (Dkt. No. 34 ("Pl.'s Resp.")) that he eventually left his position with Sears. (*Id.* at 3.) He does not state whether his departure was due to the strain caused by the HireRight Report. (*Id.*) Regardless of the basis for his departure, McNamara's Amended Complaint does not allege that he lost his job because of the HireRight Report, and the court may only consider those well-pleaded facts set forth in his Amended Complaint.

[3] Neither McNamara's Amended Complaint or the attached letter (Am. Compl. Ex. F) from Ms. Watkins states her position with the Circuit Court of Cook County Social Service Department.

(Am. Compl. Ex. F.) On June 7, 2013, HireRight responded to McNamara with a letter advising him that HireRight had investigated the disputed information and reached the following conclusion:

> Case# 11-3002331 is reporting correctly according to the Cook [sic] Circuit Court docket and the court clerk, as this record will continue to report unless an order to dismiss the charge is ordered and filed by the court; therefore no changes will be made to the report. If you believe this to be an error, please clear up any discrepancies with the courts.

(Am. Compl. Ex. G.) According to McNamara's Amended Complaint, HireRight did not conduct any additional investigation beyond its contacting the Circuit Court of Cook County Clerk's office, (*id.*), and HireRight did not contact Ms. Watkins as part of its April 2013 investigation into McNamara's criminal history (Am. Compl. ¶ 26).

McNamara also attached to his Amended Complaint the "public court record[ ] about the misdemeanor charge," (Am. Compl. ¶ 24), which he claims accurately reflects the disposition of his case (Pl's. Resp. at 6). HireRight claims to have relied on this same record to investigate McNamara's criminal background (Dkt. No. 33 ("Def.'s Mem.") at 4.) The document attached as Exhibit C is a "Certified Statement of Conviction / Disposition" ("Circuit Court Record") provided by the Circuit Court of Cook County, Illinois ("Circuit Court"). The Circuit Court Record states in relevant part:

> Charging [McNamara] with: M Disorderly Conduct  
> The following disposition(s) was/were rendered before the Honorable Judge(s):  
> 10/14/11    CHARGE AMENDED  
>                 DISORDERLY CONDUCT  
> 10/14/11    PLEA OF GUILTY  
> 10/14/11    JURY WAIVED  
> 10/14/11    FINDING OF GUILTY  
> 10/14/11    SUPERVISION – COURT  
>                 1 YRS

|           |                                                      |                |
|-----------|------------------------------------------------------|----------------|
| 10/14/11  | TERM DATE–PROB–COND DIS–SUPV                         | 10/01/12 0371  |
|           | 24 HRS SWAP BY DATE                                  |                |
| 10/14/11  | DEFENDANT FINED C001 $400                            |                |
|           | PAY BY DATE 10/01/12                                 |                |
| 10/01/12  | SUPERVISION TERM/DISCHARGED                          |                |

(Am. Compl. Ex. C.)

McNamara alleges that the HireRight Report, which reflects a disposition of "pled guilty-found guilty" and a sentence of "supervision terminated satisfactory," is not consistent with the information in the Circuit Court Record and set forth above. (Am. Compl. ¶ 24; Pl.'s Resp. at 4-6.) Because of this inaccuracy, and because HireRight allegedly failed to follow reasonable procedures to ensure accuracy, McNamara contends that HireRight violated FCRA provision 15 U.S.C. § 1681e(b). (Am. Compl. ¶ 45.) McNamara also claims that HireRight violated 15 U.S.C. § 1618i(a) by failing to conduct a reasonable investigation after McNamara disputed the accuracy of the HireRight Report. (Am. Compl. ¶ 53.) McNamara further claims that HireRight acted willfully or negligently, in violation of 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, by: (a) failing to follow reasonable procedures to assure the accuracy of its report and (b) failing to conduct a reasonable investigation after McNamara disputed the information. (*Id.* ¶¶ 53-54.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole* v. *Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice* v. *Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

I. McNamara's FCRA § 1681e(b) Claim (Count I)

In Count I, McNamara claims that HireRight is liable under FCRA § 1681e(b) for reporting inaccurate information in the HireRight Report. Section 1681e(b), however, merely requires a consumer reporting agency "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The FCRA is not a strict liability statute. *Henson* v. *CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quoting *Cahlin* v. *General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). In order to state a claim under this Section 1681e(b), a plaintiff must sufficiently allege that: (1) there was inaccurate information contained in the background report and (2) the inaccuracy was due to the reporting company's failure to follow reasonable procedures to ensure maximum accuracy. *Henson*, 29 F.3d at 284-85.

McNamara contends the HireRight Report was inaccurate because it reported the disposition of his case as "pled guilty-found guilty" and the sentence as "supervision terminated satisfactory." (Pl.'s Resp. at 4-5.) McNamara does not contest that he pled guilty to the charge, was found guilty of the charge, and received one year of supervision as punishment. He contends the HireRight Report is inaccurate because it fails to report a subsequent order by the Circuit Court discharging McNamara as a defendant and dismissing the disorderly conduct charge against him. (Am. Compl. ¶¶ 18, 24; Pl.'s Resp. at 5.) McNamara argues that this omission, on its own, renders the HireRight Report inaccurate. He also argues that under Illinois law, the unreported discharge and dismissal abolishes his guilty plea and the Circuit Court's finding of guilt. Consequently, McNamara claims the HireRight Report was also inaccurate because it erroneously reported the fact that he pled guilty and was found guilty.

A. Disposition of Supervision

This court must first review the disposition of supervision in Illinois, which McNamara alleges to have received as punishment for his disorderly conduct charge. In Illinois, if a defendant meets certain conditions, a court "may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order for supervision of the defendant." 730 ILCS 5/5-6-1(c). If the court places a defendant on supervision, the court "shall enter an order for supervision specifying the period of such supervision, and shall defer further proceedings in the case until the conclusion of the period." 730 ILCS 5/5-6-3.1(a). Specifically, "[t]he court shall

defer entering any judgment on the charges until the conclusion of the supervision." 730 ILCS 5/5-6-3.1(d).

If, at the end of the specified period, the court determines that the defendant has successfully completed the period of supervision, "the court shall discharge the defendant and enter a judgment dismissing the charges." 730 ILCS 5/5-6-3.1(e). "Discharge and dismissal upon a successful completion of a disposition of supervision shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime." 730 ILCS 5/5-6-3.1(f). "Two years after the discharge and dismissal under [730 ILCS 5/5-6-3.1] . . . a person may have his record of arrest sealed or expunged as may be provided by law." *Id.*

### B. HireRight's Inclusion of McNamara's Plea of Guilty and Finding of Guilty

McNamara contends "[t]he essence of the disposition of 'supervision' in Illinois law is that the defendant is not found guilty of an offense and does not have a criminal record." (Am. Compl. ¶ 19.) By successfully completing his supervision term, McNamara asserts that he rid himself of his guilty plea as well as the Circuit Court's finding of guilt. (*Id.*) HireRight, by continuing to report these purportedly superseded dispositions, violated the FCRA by reporting inaccurate information and thwarted the Illinois legislature's intention that supervision is "not a finding of guilt." (Pl.'s Resp. at 5.) In support of this contention, McNamara relies on 730 ILCS 5/5-6-3.1(f), which states that successfully completed supervision "shall be deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law." (*Id.*)

8

McNamara's interpretation of Section 5/5-6-3.1(f) is incorrect. Supervision moderates some of the consequences of a defendant's misdeeds by bestowing his record with a "dismissal," and granting him privileges otherwise withheld from a convicted person. *See People* v. *Coleman*, 488 N.E.2d 1009, 1014 (Ill. 1986) (holding Section 5/5-6-3.1(f) applies only to "certain rights which are lost as a matter of law by criminal convictions"). It does not "erase the defendant's criminal conduct from the time-space continuum," or "foreclose all consequences of the defendant's prior misdeeds." *United States* v. *Jones*, 448 F.3d 958, 961-62 (7th Cir. 2006). One of these consequences is that a defendant cannot escape a court's finding of guilt. A guilty plea, stipulation, or finding is the predicate for receiving supervision and does not disappear once a defendant completes his supervision term. 730 ILCS 5/5-6-1(c); s*ee also People* v. *Sheehan*, 659 N.E.2d 1339, 1344 (Ill. 1995) (holding it is "sufficiently accurate" to allege that defendants have been "found guilty" of charges for which they receive supervision). The consequences of supervision are particularly acute in the criminal context. In Illinois, the acts underlying a disposition of supervision may be used to enhance the penalties available for subsequent offenses. *Id.* at 1343-44. The same is true in federal courts, where a disposition of supervision is properly considered a "sentence" for the purpose of computing criminal history under the Federal Sentencing Guidelines ("Guidelines"). *See, e.g.*, *Jones*, 448 F.3d at 960-62.[4]

---

[4] On January 14, 2014, McNamara filed a "motion for leave to cite additional authority in opposition to defendant's motion to dismiss." (Dkt. No. 36.) McNamara argues that in *Markadonatos* v. *Village of Woodridge*, – F.3d –, No. 12 C 2619, 2014 WL 60452 (7th Cir. Jan. 8, 2014), the Seventh Circuit noted "that a defendant who successfully completes supervision is considered 'not guilty' pursuant to Illinois law." (Dkt. No. 36 ¶ 3.) In his Amended Complaint, plaintiff Markadonatos alleged that at the end of his supervision period,

Similarly, a defendant cannot escape his guilty plea, stipulation, or finding outside of the legal system. In *Beard* v. *Sprint Spectrum, LP*, 833 N.E.2d 449, 452 (Ill. App. Ct. 3d Dist. 2005), Sprint terminated the petitioner's employment because it determined that he had lied on his application by stating that he had never been convicted of a crime. *Id.* at 450. The petitioner's background report revealed that he was found guilty of a public morals charge and received one month of court supervision which was satisfactorily terminated. *Id.* The Illinois Appellate Court held that Sprint could withhold employment on the basis of the petitioner's guilty plea and was free to disregard any post-supervision dispositions, such as a dismissal. *Id.* at 452. The court explained that private employment is not one of the rights statutorily denied to convicts and is thus not protected from impairment under Section 5/5-6-3.1(f). *Id.*

The Illinois Appellate Court's holding in *Beard* unmistakably allows Sears, a private employer, to consider McNamara's guilty plea in deciding whether to offer him a position. It follows that HireRight, which Sears hired to provide background information, may report McNamara's guilty plea and the Circuit Court's finding of guilt. Section 5/5-6-3.1(f) affords McNamara the opportunity to seal his record, but not until October 1, 2014.[5] McNamara simply

---

he would receive an adjudication of "not guilty" on his record. *Markadonatos*, – F.3d –, 2014 WL 60452, at *3. The Seventh Circuit accepted his allegation only for the purpose of evaluating Markadonatos's claim. The Seventh Circuit recognized that Markadonatos had admitted "the factual basis for the charges against him," *id.*, and this admission formed the basis, in part, that Markadonatos lacked standing to challenge a policy on behalf of all individuals who are eventually adjudicated not guilty. *Id.* at *3, n.2. In other words, the Seventh Circuit's recent decision does not disturb its previous holding that "when a case is dismissed after supervision, the court does not wave a magic wand to erase the defendant's criminal conduct . . . ." *Jones*, 448 F.3d at 961.

[5] Section 5/5-6-3.1(f) permits a defendant to have his record of arrest sealed or expunged two

does not have a clean record. He did not rid himself of his guilty plea or the Circuit Court's finding of guilt by completing his supervision, and HireRight may continue to report both dispositions—until, of course, they are sealed or expunged—without fear of liability under the FCRA.

    C.  <u>HireRight's Failure to Report McNamara's Post-Supervision Dismissal</u>

Although McNamara cannot escape his guilty plea, he is entitled to a complete and accurate portrayal of his criminal history under the FCRA. McNamara alleges that HireRight omitted from its report a Circuit Court order dismissing his charge. (Am. Compl. ¶ 22.) As discussed above, a dismissal following supervision does not foreclose many of the consequences of McNamara's acts. But a post-supervision dismissal is not meaningless. It allows the court to provide a small measure of relief by bestowing, on McNamara's record, a "judgment dismissing the charge[ ]." 730 ILCS 5/5-6-3.1(e). Sears is free to disregard this judgment in making its employment decision, and this court is free to disregard this judgment in calculating criminal history under the Guidelines. HireRight, however, is not free to omit a dismissal following supervision from its background reports. Employers and employees rely on HireRight to provide a full and accurate record. Because HireRight's reports hold significant sway over an individual's ability to obtain employment, the FCRA requires HireRight to follow "reasonable procedures to assure maximum possible accuracy" in its reports. 15 U.S.C. § 1681e(b). Disregarding a post-supervision dismissal, which a court has granted expressly to mitigate the

---

years after discharge and dismissal. 730 ILCS 5/5-6-3.1(f). McNamara alleges that he was discharged and his was charge dismissed on October 1, 2012, which means that he may petition to seal or expunge his record on October 1, 2014.

consequences of the offense, is inconsistent with the "maximum accuracy" requirement of Section 1681e(b). In other words, under the FCRA, HireRight owes McNamara a duty to present Sears with complete picture of his criminal history, including his guilty plea, sentence of supervision, and the Circuit Court's order dismissing his charge. If, as McNamara claims, HireRight failed to include in its report an order dismissing his charge, the HireRight Report is incomplete and inaccurate. HireRight acknowledged as much in its response to McNamara's dispute: "this record will continue to report unless an order to dismiss the charge is ordered and filed by the court." (Am. Compl. Ex. G.)

McNamara's allegation of HireRight's inaccuracy does not end this court's inquiry as to the sufficiency of Count I as pled; McNamara must also allege that HireRight's inaccuracy was the result of its failure to follow reasonable procedures. *See Henson*, 29 F.3d at 284 ("A credit reporting agency is not liable under the FCRA if it followed reasonable procedures to assure maximum possible accuracy, but nonetheless reported inaccurate information in the consumer's credit report.") (quotations omitted). HireRight argues that it obtained its information from the Circuit Court Record, which does not appear to contain any order dismissing the disorderly conduct charge. (Am. Compl. Ex. C.) HireRight further argues that it is entitled to rely on the Circuit Court Record, without additional investigation, under settled Seventh Circuit law. The court agrees. In *Henson*, the Seventh Circuit held as a matter of law that absent prior notice of unreliability, "a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket." *Id.* at 285. In *Henson*, the Seventh Circuit explained that court judgment documents are "presumptively reliable" and requiring

12

reporting agencies to go beyond the face of court records would be "unduly burdensome and inefficient." *Id.* at 285-86.

McNamara claims the Circuit Court Record is accurate, contains an order dismissing his charge, and HireRight's omission of the order is the result of its failure to interpret correctly the Circuit Court docket terminology. Specifically, McNamara alleges the final entry on the Circuit Court Record, "Supervision Term/Discharged," (Am. Compl. Ex. C), is all that was necessary to discharge him as a defendant and dismiss the disorderly conduct charge (Pl.'s Resp. at 5). McNamara further contends that HireRight's use of the phrase "Supervision Terminated Satisfactory" in place of "Supervision Term/Discharged" does not accurately portray the discharge and dismissal entered on the docket and contemplated by Section 5/5-6-3.1(e). (*Id.*) McNamara would be correct if the order "Supervision Term/Discharged" clearly reflected an order dismissing his disorderly conduct charge. Section 5/5-6-3.1(e), however, states that in addition to discharging the defendant, "the court shall . . . enter a judgment dismissing the charges." The statute explicitly states that upon successful completion of supervision, "the court shall discharge the defendant and enter a judgment dismissing the charges." 730 ILCS 5/5-6-3.1(e). McNamara attached to his Amended Complaint certain third-party materials purporting to prove that the order "Supervision Term/Discharged" is a "judgment dismissing the charges" pursuant to Section 5/5-6-3.1(e). (*See, e.g.*, Am. Compl. Ex. B ("If supervision is completed satisfactorily, the court will discharge you and enter a judgment dismissing the charges without you having to return to court.").) McNamara also stated in his response that he intends to present additional evidence showing the same. (Pl.'s Resp. at 5.) But additional

evidence will not save McNamara's Section 1681e(b) claim. The reasonable interpretation of "Supervision Term/Discharged" is that McNamara's supervision period was terminated and that McNamara himself was discharged as a defendant. The phrase "Supervision Term/Discharged" complies with the requirement that "the court shall discharge the defendant" in Section 5/5-6-3.1(e). The phrase "Supervision Term/Discharged" does not comply with the second requirement of Section 5/5-6-3.1(e) that "the court shall . . . enter a judgment dismissing the charges." Nor does the phrase "Supervision Term/Discharged" reasonably describe an order dismissing McNamara's charge when viewed in the light most favorable to McNamara.

Moreover, McNamara does not allege HireRight had reason to believe the Circuit Court Record, or its interpretation of the Circuit Court Record, was unreliable at the time it compiled its report. To the extent McNamara alleges HireRight should infer or otherwise know of the inaccuracy, such an argument is contrary to the law of the Seventh Circuit in *Henson*. *See* 29 F.3d at 285 (holding credit reporting agencies need not go beyond the face of court records "absent prior notice from the consumer that the information may be inaccurate").

Because HireRight prepared a background report that is consistent with the face of the underlying Circuit Court Record, HireRight has as a matter of law followed a reasonable procedure to assure maximum accuracy in its report. Consequently, McNamara cannot state a claim under Section 1681e(b) and Count I of his Amended Complaint must be dismissed.

II. McNamara's FCRA § 1681i(a) Reinvestigation Claim (Count II)

In Count II, McNamara claims that HireRight is liable under 15 U.S.C. § 1681i(a) for failing to conduct a reasonable reinvestigation after he disputed the information in the HireRight Report. Section 1681i(a)(1)(A) states in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. 1681i(a)(1)(A).

Section 1681i(a) imposes a duty to reinvestigate any potential inaccuracy or material omission whenever the reporting agency learns of the potential error. *Id.* In certain circumstances, that duty may include an obligation to go beyond the original source of information and conduct an independent investigation. Whether the reporting agency must take additional steps in its reinvestigation depends on two factors: "(1) whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable; and (2) the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Ruffin-Thompkins* v. *Experian Info. Sys.*, No. 03 C 683, 2003 WL 25719228, at *6 (N.D. Ill. Dec. 31, 2003) (quoting *Henson*, 29 F.3d at 287) (quotations omitted). The adequacy of an investigation is generally a question of fact. *Kohut* v. *Trans Union, LLC*, No. 04 C 2854, 2004 WL 1882239, at *4 (N.D. Ill. Aug. 11, 2004).

15

As discussed above, McNamara alleges that HireRight omitted the post-supervision dismissal of his disorderly conduct charge, and that the omission rendered the HireRight Report inaccurate. The Circuit Court Record does not on its face contain an order dismissing the charge, and HireRight need not go beyond the Circuit Court Record in preparing McNamara's background report. Under *Henson*, however, such exclusive reliance on the Circuit Court Record may not be justified once McNamara has disputed the information in the HireRight Report. *See Henson*, 29 F.3d at 286-87 (holding reporting agency may be required, in certain circumstances, to go beyond a judgment docket to verify information contained therein). In other words, once McNamara challenged the accuracy of his report, HireRight may have had a duty to parse the opaque terminology of the Circuit Court Record and uncover whether the phrase "Supervision Term/Discharged" truly reflects an order dismissing McNamara's charge.

HireRight claims it satisfied its obligations under Section 1681i(a) by confirming that McNamara's case was "reporting correctly according to the Cook [sic] Circuit Court docket and the court clerk." (Am. Compl. Ex. G.) HireRight contends it had no duty to go beyond the original source because McNamara never challenged the reliability of the Circuit Court Record, merely HireRight's interpretation of it. (Dkt. No. 35 ("Def.'s Reply") at 9.)

McNamara claims he disputed the information in the HireRight Report "by phone and by multiple emails starting on or about May 10, 2013." (Am. Compl. ¶ 25.) McNamara also sent HireRight a letter from Deanna Watkins, an employee of the Circuit Court of Cook County Social Service Department, stating "supervision is not a guilty plea." (Am. Compl. F.) Notwithstanding Ms. Watkins' inaccurate description of supervision, her letter and McNamara's

16

multiple entreaties were sufficient to put HireRight on notice that the Circuit Court Record, or HireRight's interpretation of the Circuit Court Record, might be unreliable.

Whether HireRight's investigation was reasonable in light of McNamara's dispute is a material question of fact. McNamara alleges that the order "Supervision Term/Discharged" on the Circuit Court Record represents a dismissal of his disorderly conduct charge. (Am. Compl. ¶ 22; Pl.'s Resp. at 5.) McNamara also alleges that he disputed the accuracy of HireRight's report relating to him and that HireRight's investigation, which was limited to confirming that his case "was reporting correctly" according to the docket and the Circuit Court Clerk, was unreasonable. (Am. Compl. ¶¶ 25, 26, 30, 51.) It is plausible that in the Circuit Court of Cook County, an order of discharge and "judgment dismissing the charges" contemplated by Section 5/5-6-3.1(e) is docketed as "Supervision Term/Discharged." It is similarly plausible that HireRight, whose business depends on the ability to retrieve and interpret court dockets, should have known the correct interpretation "Supervision Term/Discharged" or conducted an investigation sufficient to determine the correct interpretation once McNamara called into question the accuracy of his report. Because McNamara's allegations, if true, are sufficient to state a claim under 15 U.S.C. § 1681i(a), HireRight's motion to dismiss Count II of McNamara's Amended Complaint is denied.

## CONCLUSION

For the reasons explained above, the court rules as follows: HireRight's "Motion to Dismiss Amended Class Action Complaint" (Dkt. No. 32) is granted as to Count I of plaintiff McNamara's Amended Complaint, because Count I fails to allege a violation of 15 U.S.C. 1681e(b), and denied as to Count II, which does sufficiently allege a violation of 15 U.S.C. § 1681i(a). Count I is dismissed. Count II remains pending. Defendant HireRight's answer to

Count II is due on or before 2/11/14. Counsel for the parties are requested to meet and confer pursuant to Rule 26(f). Counsel are also requested to file jointly a Form 52 on or before 2/18/14. This case is set for a report on a status and entry of a scheduling order on 2/25/14 at 9:00 a.m. The parties are encouraged to discuss settlement. The question of class certification remains under advisement.

    ENTER:

                                       */s/ James F. Holderman*
                                       JAMES F. HOLDERMAN
                                       District Judge, United States District Court

Date: January 29, 2013